### THE ARIZONA.

(District Court, E. D. New York. June 23, 1920.)

Shipping ⬤⟶3½, New, vol. 8A Key-No. Series—Federal control, unless proximate cause of claim for salvage service, is no bar to proceedings in rem.

Transportation Act Feb. 28, 1920, by sections 205, 206, providing for direct suits against the United States on claims arising out of government control of carriers, and by section 206(g) that no execution or process shall be levied on property of any carrier where the cause of action grew out of the possession, use, control, or operation of any system of transportation while under federal control, *held* to apply only to claims which have as a proximate cause possession and use by the government, and not to bar a suit in rem against a vessel for salvage, brought after government control ceased, where, while the services were rendered during federal control, the vessel was under charter and no claim of liability is made against the United States.

In Admiralty. Suit by Benjamin J. Eldred and others against the derrick lighter Arizona and cargo. On objection to issuance of process. Overruled.

Alexander & Ash, of New York City, for libelants.

Burlingham, Veeder, Masten & Fearey, of New York City, for Southern Pacific Co.

CHATFIELD, District Judge. The lighter Arizona was the property of the Southern Pacific Company, and taken over by the Director General of Railroads prior to January 27, 1920. On that day the Arizona was under an oral charter to the Sunset Lighterage Corporation at an agreed rate per day. The master of the lighter was an employé of the Director General of Railroads. It appears that the Sunset Lighterage Corporation had in turn subchartered the Arizona to the East Jersey Railroad & Terminal Company, or to the Tidewater Oil Company, for the carrying of oil, and on a voyage for the East Jersey Railroad & Terminal Company salvage services were rendered it while loaded with a cargo of oil. The salvage services are alleged to have been rendered during an oil fire, by the master and crew of the steam lighter C. Blaine Warner, who with the Warner claim that they removed the Arizona to a place of safety. Libel was filed in this district on March

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

26, 1920, and issuance of process has been withheld, pending determination of this motion by proctors for the Southern Pacific Company, who stand ready to appear, so as to make the actual service of process unnecessary, but who on a special appearance object to the issuance of process because of the provisions of section 206 of the law of February 28, 1920, which provides as follows:

"(g) No execution or process, other than on a judgment recovered by the United States against a carrier, shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out ot the possession, use, control, or operation of any railroad or system of transportation by the President under federal control."

The matter has been argued, and counsel for both parties have attempted to draw such conclusion as to the meaning of the words "possession, use, control, or operation" as may be inferred from the adjudicated cases on the subject of boats chartered under such circumstances as to be a demise. Monk v. Cornell Steamboat Co., 198 Fed. 472, 117 C. C. A. 232; Hastorf v. F. R. Long-W. G. Broadhurst Co., 239 Fed. 852, 152 C. C. A. 638; The Carroll, 248 Fed. 475, 160 C. C. A. 485; Bartley v. Borough Development Co. (D. C.) 214 Fed. 296.

But the section in question must be interpreted independently of those cases. For instance (whether the taking over by the railroad and the subsequent charters were demises or not), if section 206 is taken broadly, then certainly everything which happened to the boat was the consequence of her having been taken into the possession of the government. But if section 206 is to be taken to mean that the claim must have as a proximate cause possession and use by the government, then this action is maintainable, and the claim need not be settled by the President and disposed of in a suit against the agent designated for that purpose, with the subsequent petitions and answers under rule 59 (29 Sup. Ct. xlvi), in order to bring in the parties who should be made to answer for the damage.

If the only issue be the legal consequence of a charter like a demise, the statute in question would be available (if the libelant is so advised), starting with the government taking of the boat as the beginning of the chain of responsibility. Then the present action would not be maintainable. But if the issue is that of responsibility, and the libelant sees fit to sue the boat on the theory that the owner may bring in the actual party responsible and leave out the government as an intermediate party in possssion, then section 206 should not be held to have been intended by Congress to cover such a case.

To put it another way: If the libelant, by suing the boat, will start a claim which under rule 59 must be disposed of by bringing in the government, then the action should be brought directly against the government under sections 205 and 206. In that case the present action should be dismissed. But if, by suing the boat, the real issue can be tried with the government left out, then every one will be the gainer.

It does not seem to the court, in the absence of proof to the contrary, that Congress intended, or that the language of the statute (section 206) means, that all cases must be defended by the government and must proceed under the procedure of sections 205 and 206. On the

contrary, the intent seems to have been that only where the claim is that the government is responsible shall the procedure be by way of claim against the Government. In all cases the libelant and the owner of the boat must choose whether the government shall be brought in, and unless the choice is made the action need not be halted, and can proceed without prosecuting a claim under sections 205 and 206, supra.

This motion seemingly presents an attempt to secure an interpretation of section 206, subd. (g), from the standpoint of such natural interference with government activities as would be occasioned by the seizure, under process, of a vessel which the governmnt might be using or might wish to use. But this apparent situation is fallacious. The government has already turned back the property in question. In fact substantially all the property to which the statute of February 28, 1920, is applicable has been returned by the government, and the statute was intended to provide for the settlement of proper claims against the government, or such claims as arose directly from the government's acts. The statute was not intended to provide that every claim with relation to the property which had previously been in the government's possession must be brought against the United States, nor did the statute intend that the government should thus indirectly become liable for anything more than those acts for which the government should be properly responsible.

In the case at bar the owner has his boat; the libel is directed against the boat, and unless the government can properly be expected to pay the claim in question, there is no reason why Congress should provide that the action must be defended by the government. On the other hand, if the claim should be paid by the government, then, undoubtedly, the government may be brought in under the other sections of the statute, and, if the government is compelled to take the position of claimant, no bond could be required, nor would physical seizure of the vessel be allowed.

But a situation like that shown in the present case would seem to present no difficulty in this regard, and the statute does not seem to require such an interpretation which compels a suit against the government or restricts the libelant to an action in personam.

The motion will be denied.